# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2088
No. 02-2089

_____

|  |  |  |
|---|---|---|
| Charles E. Emmenegger; Robert F. Ritzie; James E. Riley, | * * * | |
| Appellees/Cross-Appellants, | * * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Bull Moose Tube Company; Caparo, Inc.; Bull Moose Tube, Ltd., | * * | |
| | * | |
| Appellants/Cross-Appellees. | * | |

_____

Submitted: December 9, 2002

Filed: March 21, 2003

_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and RILEY, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Bull Moose Tube Company; Caparo, Inc.; and Bull Moose Tube, Ltd. (collectively, the Company), appeal from the judgment entered by the District Court[1] on a jury verdict in favor of Charles E. Emmenegger and Robert F. Ritzie on their

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

claims for compensation related to a phantom-stock plan. The Company also appeals from the court's prejudgment interest award. Emmenegger, Ritzie, and James E. Riley cross appeal from the order awarding the Company partial cost of the supersedeas bond that the Company was required to post on the first appeal of this case. We affirm.

This is the second time this case has been before us, and we refer the interested reader to the previous published opinions, cited infra, for details of the relationship between the plaintiffs and the defendants. Briefly, in the first case, Emmenegger, Ritzie, and Riley, senior executives whose employment with the Company was terminated, sued the Company under ERISA[2] and state law seeking compensation under a phantom-stock plan (the PSP or the Plan) and their severance plans. The District Court determined that ERISA was properly invoked and dismissed the state law claims as preempted. After a bench trial, judgment was entered for Emmenegger, Ritzie, and Riley on all of their claims, Emmenegger v. Bull Moose Tube Co., 13 F. Supp. 2d 980 (E.D. Mo. 1998), and attorney fees and costs were awarded to the plaintiffs, Emmenegger v. Bull Moose Tube Co., 33 F. Supp. 2d 1127 (E.D. Mo. 1998).

On appeal, the Company challenged the jurisdiction of the District Court under ERISA. We affirmed in part, concluding that the severance plans were indeed ERISA plans. (The Company did not appeal from the District Court's decision on the merits of the severance claims.) But we vacated the judgment as to the PSP claims, having determined that the PSP was not an ERISA plan, and dismissed the appeal for lack of subject-matter jurisdiction. We remanded the case to the District Court for further proceedings. Emmenegger v. Bull Moose Tube Co., 197 F.3d 929 (8th Cir. 1999).

---

[2]Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. §§ 1001-1461 (1994 & Supp. III 1997) and in scattered sections of 26 U.S.C.).

Back in the District Court, the plaintiffs recast the PSP claims as state law causes of action for breach of contract, and those claims were tried to a jury. The jury found for Emmenegger and Ritzie on a portion of their claims. Before us now are appeals from the District Court's denial of the Company's motions for judgment as a matter of law and for a new trial and from two post-judgment orders of the District Court.

I.

We review de novo the denial of a motion for judgment as a matter of law (JAML) after a jury trial, applying the same standard as the district court. Fletcher v. Price Chopper Foods of Trumann, Inc., 220 F.3d 871, 875 (8th Cir. 2000). We look at the evidence in the light most favorable to the verdict, giving the non-moving party the benefit of all reasonable inferences. Moring v. Ark. Dep't of Corr., 243 F.3d 452, 455 (8th Cir. 2001). We do not judge the credibility of witnesses or weigh the evidence. Fletcher, 220 F.3d at 875. In other words, we review the decision to deny the motion "with great deference to the jury's verdict." Id. As for the denial of a motion for new trial, that decision is reviewed only for an abuse of discretion. Moring, 243 F.3d at 455. To win reversal, the moving party must show that the trial court's decision to deny the motion and let the verdict stand results in a miscarriage of justice. Id. Keeping these standards in mind, we consider the evidence before the jury.

Emmenegger, Ritzie, and Riley were employed as senior executives at Bull Moose Tube Company (BMT) when it was acquired in 1988 by Caparo, Inc., a closely-held company essentially owned by Lord Swraj Paul. Soon after Caparo took over, a phantom-stock plan was put in place, in which all three plaintiffs participated. As we observed in our first opinion, the PSP is "an incentive plan, which also has the objectives of furthering the interests of BMT and its owner, encouraging selected managers to stay with BMT, and 'compensating [those managers] for services

rendered to' BMT." Emmenegger, 197 F.3d at 932 (quoting the PSP). Under the terms of the Plan, PSP shares are redeemed at either redemption value, which reflects the earnings performance of BMT, or the considerably lower book value. Book value is paid to a participant who leaves BMT "for any reason other than those set out in Subsection 8.1." Bull Moose Tube Co. Phantom Stock Plan § 8.2 (revised Feb. 21, 1991) (hereinafter Phantom Stock Plan). Under § 8.1 of the PSP, a participant may redeem his shares, once vested, for redemption value beginning five years after implementation of the program simply by making the request, and otherwise receives redemption value "upon the happening of certain triggering events, such as retirement, disability, death, termination without cause, or takeover." Emmenegger, 197 F.3d at 932. Termination of employment without cause is defined in the Plan as termination "for other than (i) willful or gross misconduct or willful or gross negligence of his duties for the Corporations, (ii) intentional or habitual neglect of his duties for the Corporations or (iii) theft or misappropriation of the Corporations' funds or the commission of a felony." Phantom Stock Plan at 8 (Definitions).

In 1994, PSP participant Dave Lichtfuss resigned from BMT and received book value for his sixty-six shares. Emmenegger and Ritzie, who together with Swraj Paul at that time constituted the Caparo, Inc., board, which administered the Plan, believed the board had authorized a redistribution of those shares, six to Emmenegger, nine to Ritzie, nine to Riley, and the rest to the remaining participants.

Things went well for BMT after it was acquired by Caparo, Inc., and the redemption value of the PSP shares skyrocketed. Notwithstanding this success, Emmenegger, Ritzie, and Riley all were terminated in March 1996, and Emmenegger and Ritzie were removed from the board.[3] The reconstituted board that decided

_____

[3]As we explained in our first opinion, at the time of the terminations, Riley was a vice-president of Caparo Steel Company, a related corporation, and Emmenegger and Ritzie were devoting significant amounts of time to running Caparo Steel as well. Emmenegger, 197 F.3d at 930 n.3.

Emmenegger and Ritzie were terminated "with cause" for purposes of PSP share redemption consisted of Paul, two of his sons, and two of his employees. At that time, Emmenegger owned 204 phantom shares and Ritzie and Riley each owned 66, not counting the redistributed Lichtfuss shares. Because of the transfer of his employment from BMT to Caparo Steel, Riley had been compelled to request redemption of his shares at the time of the transfer, before his termination, but had not yet been paid for those shares when he was fired. Indeed, none of the three plaintiffs was paid anything, not even book value, for his PSP shares initially. At some point after judgment was entered in the District Court following the first trial, Emmenegger and Ritzie finally were paid book value for their shares and Riley was paid redemption value for his shares according to the terms of the Plan (request for redemption while still employed).

As we have explained, Emmenegger, Ritzie, and Riley raised various claims under ERISA in their initial complaint. Upon remand, it having been determined there was no federal-question jurisdiction as to the PSP claims, Emmenegger and Ritzie amended their pleadings to allege state-law claims that the Company breached its contracts with them when it failed to pay them redemption value for their shares. (By this time the Company had paid Riley redemption value for his shares.) In addition, all three plaintiffs claimed breach of contract for the Company's failure to pay them for the redistributed Lichtfuss shares. The District Court determined it had jurisdiction to try the case.[4]

---

[4]The District Court concluded it had supplemental jurisdiction over the plaintiffs' claims and exercised its discretion in asserting that jurisdiction in "the interests of judicial economy, convenience and fairness." Memorandum and Order at 2 (Mar. 30, 2001). We agree with the District Court's determination that it had supplemental jurisdiction over plaintiffs' state-law claims. See 28 U.S.C. § 1367 (2000). We have jurisdiction over this appeal under 28 U.S.C. § 1291 (2000).

After hearing all the evidence and upon deliberating, the jury answered "yes" to the interrogatory: "Did the Caparo, Inc. Board of Directors fail to engage in a 'reasonable exercise of its discretion in good faith' in determining" that Emmenegger and Ritzie were "terminated 'with cause'"? Verdict Form, questions 2, 3. The jury also found, however, that the redistribution of the Lichtfuss shares to the Plan's other participants was not authorized, and Emmenegger, Ritzie, and Riley's claims regarding the Lichtfuss shares were dismissed with prejudice, a decision from which the plaintiffs have not appealed.[5] Emmenegger was awarded damages of $3,621,244.80, plus interest, and Ritzie was awarded $1,171,579.20, plus interest. The Company asserts that the court erred in denying its motion for JAML and its motion for a new trial.

## A.

The Company cites three actions of Emmenegger and Ritzie in arguing that the termination "with cause" was a reasonable exercise of the board's discretion in good faith. Primarily, it relies on the efforts of Emmenegger and Ritzie to effect a redistribution of the sixty-six Lichtfuss shares to the remaining PSP participants. Emmenegger and Ritzie testified that at a meeting of the Caparo, Inc., board (Emmenegger, Ritzie, and Paul), it was determined that the board had authority under the terms of the Plan to redistribute the shares and that in fact the board voted to do so. Paul testified that he never agreed to the redistribution and that no action could be taken by the board unless he agreed, notwithstanding that the Plan neither required that votes of the board be unanimous nor provided that Paul could override a majority vote. The Company characterizes the actions of Emmenegger and Ritzie as gross or willful misconduct and misappropriation of the Company's funds. In addition to the

---

[5]Because Riley's only claim in the second trial was for compensation for the redistributed Lichtfuss shares, he has no issues on appeal concerning the merits of the jury verdicts.

-6-

dispute over the Lichtfuss shares, the Company briefly alludes to purported evidence of a real estate transaction that it claims involved self-dealing on the part of Emmenegger and to the alleged poor job performance of Emmenegger and Ritzie at Caparo Steel.[6] Based on these acts, the Company contends that the board reasonably exercised its discretion in good faith in deciding that Emmenegger and Ritzie were terminated with cause. As we have said, the jury found otherwise.

"A motion for judgment as a matter of law is a challenge to the sufficiency of the evidence." Yannacopoulos v. Gen. Dynamics Corp., 75 F.3d 1298, 1302 (8th Cir. 1996). We have reviewed the record in this case mindful of our charge to view the evidence in the light most favorable to the verdict and to give Emmenegger and Ritzie the benefit of all reasonable inferences that may be drawn from the evidence. We conclude there is ample evidence to support the jury's finding that the board did not act reasonably or in good faith when it decided that Emmenegger and Ritzie were terminated with cause, that is, for willful or gross misconduct and misappropriation. The Company takes up much of its brief citing evidence that it claims supports its position in this appeal, but has ignored evidence to the contrary, including the evidence that the Company had a significant financial incentive to terminate

---

[6]In its decision on the issue of severance benefits after the first trial of this case (the merits of which decision were not appealed), the District Court concluded:

[D]efendants' explanation that they terminated Emmenegger and Ritzie for disciplinary reasons does not withstand even mild scrutiny. . . . Paul demonstrated his satisfaction with plaintiffs' performance by putting them in charge of the Caparo Steel project. It may well be that in taking on that challenge, plaintiffs overextended themselves. But it is hardly the case that Caparo Steel's problems were, in the main, of plaintiffs' doing. The evidence shows that problems continued to plague the company long after plaintiffs' departure.

Emmenegger, 13 F. Supp. 2d at 1002.

Emmenegger and Ritzie "with cause" and thereby prevent them from receiving redemption value for their PSP shares. The jury apparently believed the plaintiffs' evidence on this point, and we cannot say that no reasonable juror could have returned a verdict for the plaintiffs. See Moring, 243 F.3d at 455. The District Court did not err in denying the Company's motion for JAML. Likewise, the District Court did not abuse its discretion in denying the motion for a new trial.

B.

As another basis for reversal, the Company contends that the verdict in favor of Emmenegger and Ritzie is inconsistent with the jury's finding that the redistribution of the Lichtfuss shares was not authorized.[7] When presented with allegedly inconsistent verdicts on appeal, we must make every effort to bring them into agreement, "viewing the case in any reasonable way that makes the verdicts consistent." Anheuser-Busch, Inc. v. John Labatt Ltd., 89 F.3d 1339, 1347 (8th Cir. 1996), cert. denied, 519 U.S. 1109 (1997). Assuming without deciding that inconsistent verdicts in a civil case are grounds for JAML or a new trial, we nevertheless reject the Company's argument because we conclude that the verdicts in question here are easily reconciled and therefore not inconsistent with each other.

In finding for the Company on the issue of the Lichtfuss shares, the jury found any or all of three facts: that the Plan did not permit a redistribution; that the Caparo, Inc., board did not agree to a redistribution; and that the board failed to reach agreement on all matters necessary for redistribution, including a carrying value for the shares. See Instruction No. 7. But in order to find in favor of the Company on

---

[7]Emmenegger and Ritzie contend that the Company has waived this argument because it was not raised in the District Court. The Company responds that it was not required to raise the issue before the jury was discharged because the verdicts in question were special verdicts. Our resolution of the issue makes it unnecessary for us to consider Emmenegger and Ritzie's waiver argument.

the Lichtfuss redistribution issue, the jury was **not** required to find that the efforts of Emmenegger and Ritzie to redistribute the Lichtfuss shares reflected gross or willful misconduct and misappropriation. On the evidence before it, the jury might easily have found that it should have been clear to the board that Emmenegger and Ritzie innocently misunderstood the Plan or the results of the board meetings relating to redistribution. In that case, the jury could also find, as it did, that the board therefore did not reasonably exercise its discretion in good faith when it determined that Emmenegger and Ritzie were fired with cause. The arguably inconsistent verdicts are reconcilable and are not grounds for reversal of the denial of the Company's motion for JAML or a new trial.

C.

The Company also argues that the District Court erred in refusing to give its proposed jury instructions explaining the meaning of "good faith" as that term is used elsewhere in the instructions and in the verdict form relating to the issue of termination with cause. The phrase was relevant to the jury's deliberations because the terms of the PSP give the board authority to administer the Plan "in the reasonable exercise of its discretion in good faith." Phantom Stock Plan at § 2.1. Nowhere in the Plan, however, is "good faith" explained or defined. The court agreed with Emmenegger and Ritzie that "good faith" likewise did not need to be defined for the jury and rejected the proposed instructions.

We review claims of error in instructions for abuse of discretion. Cox v. Dubuque Bank & Trust Co., 163 F.3d 492, 496 (8th Cir. 1998). Where the trial court elects not to give proposed instructions, we will find such an abuse only if the proposed instructions (1) correctly state the law, (2) concern a matter not otherwise covered by the charge to the jury, and (3) involve a point so important that the court's refusal to give the instructions "seriously impaired the party's ability to present an effective case." Yannacopoulos, 75 F.3d at 1303 (citations to quoted cases omitted).

-9-

Because the Company's case was not impaired, that is, there was no prejudice to the Company from the District Court's rejection of the instructions, see Cox, 163 F.3d at 497, we do not consider elements (1) and (2).

The proposed instructions defined "good faith" as "the state of mind denoting honesty of purpose, freedom from intention to defraud, and faithfulness to one's duty or obligation." Proposed Instructions Nos. 9 Alt., 10 Alt. The Company asserts that "[i]f the jury had been given this definition, and had it considered the Caparo board's actions within the framework of the question whether there was evidence of *dishonesty* or *intention to defraud*, the outcome of this case likely would have been different (inasmuch as there was *no* such evidence)." Brief of Appellants at 67. Even though the proposed definition does not set out the three "good faith" factors in the alternative, but apparently requires that a jury find of all of them if one is to prove good faith, the Company does not argue there was no evidence of the board's lack of faithfulness to "its duty or obligation." In any event, as we have discussed, we think there was ample evidence that the board did not act with "honesty of purpose" in firing Emmenegger and Ritzie with cause, given the Company's financial incentive to avoid paying the men redemption value for their PSP shares. The rejection of the tendered instructions explaining "good faith" was not an abuse of discretion and is not grounds for reversal.

II.

The District Court, stating that "I do not believe that Missouri law gives me any discretion to deny the requested 9% prejudgment interest from the time the payments were due until the date of this judgment," awarded $1,827,787.10 in prejudgment interest to Emmenegger and $576,898.49 in prejudgment interest to Ritzie. Memorandum Opinion at 2 (Dec. 19, 2001). The Company contends that the District Court erred in concluding that it had no discretion regarding the calculation and proposes that any award of prejudgment interest for the time during which the

-10-

plaintiffs pursued their case under ERISA should be either denied altogether or calculated using the lower federal rates of prejudgment interest for that period.[8] We review de novo the question of law raised by the Company. Cf. Swope v. Siegel-Robert, Inc., 243 F.3d 486, 497 (8th Cir.) ("Whether the rate of prejudgment interest in a diversity case should be that specified by state law rather than the federal prejudgment rate is a question of law and should be reviewed *de novo*."), cert. denied, 534 U.S. 887 (2001).

In a diversity case, the question of prejudgment interest is a substantive one, controlled by state law.[9] See Swope, 243 F.3d at 497; Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co., 933 F.2d 1433, 1435 (8th Cir. 1991). Under Missouri law, as relevant here, "[c]reditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made." Mo. Rev. Stat. § 408.020 (2000). "As a general rule, '[a]n award of prejudgment interest in a case where § 408.020 is applicable is not a matter of court discretion; it is compelled.'" Springfield Land & Dev. Co. v. Bass, 48 S.W.3d 620, 633 (Mo. Ct. App. 2001) (quoting Huffstutter v. Mich. Mut. Ins. Co., 778 S.W.2d 391, 395 (Mo. Ct. App. 1989)).

---

[8]The District Court noted that "the federal judgment interest rate ranged between 5.5% and 6%" from the time payment was due until early 2001. Memorandum Opinion at 3 (Dec. 19, 2001). In its brief, the Company claims the applicable federal rate for the period is 2.17%. Brief of Appellants at 73. But 2.17% is actually the federal statutory post-judgment rate of interest as of the date of the District Court's order awarding interest. See Memorandum Opinion at 4 (Dec. 19, 2001).

[9]We recognize, of course, that the District Court took this case under its discretionary supplemental jurisdiction, see supra n.4, and so this is not a case where jurisdiction is based on diversity. Nevertheless, as in a diversity case, a federal court exercising supplemental jurisdiction is bound to apply the substantive state law governing the claims.

Fundamentally, the Company is suggesting that the award should be adjusted to reflect equitable considerations. Considering the difference between the applicable federal and state rates of prejudgment interest in this case, and some of the reasons that this litigation has gone on for so long, the argument has some appeal. It is true that in some cases an award of prejudgment interest may be an equitable remedy. Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 945 (8th Cir. 1999) (considering an award of prejudgment interest in an ERISA case where the statute did not mandate an award but provided for the award of "other appropriate equitable relief"). But in this case, such interest is a legal remedy the award of which, Missouri state courts have declared, is not discretionary with the awarding court.[10] "Equitable principles of fairness and justice may not be considered when awarding prejudgment interest on a liquidated demand." Huffstutter, 778 S.W.2d at 395.

Section 408.020 does not allow for equitable adjustments but mandates prejudgment interest at the fixed rate of nine percent from the time payment is due. Under the statute, prejudgment interest in actions for breach of contract accrues "from the date of the breach or the time when payment was due under the contract," Rich v. Peters, 50 S.W.3d 814, 823 (Mo. Ct. App. 2001) (quoting Wulfing v. Kansas City S. Indus., Inc., 842 S.W.2d 133, 160 (Mo. Ct. App. 1992)), not from the time when suit for breach of that contract was filed. To do as the Company suggests and order that no prejudgment interest be paid for the four years or so between the time the money was due and the time the complaint was amended after remand to assert state-

_____

[10]Interestingly, after the ERISA trial of this case (where the award of prejudgment interest was discretionary), the District Court declined to award the plaintiffs additional prejudgment interest in excess of the federal rate, in spite of the fact "that defendants have benefited from the 'spread'—the difference between the legal rate of pre-judgment interest due and the real value of having the use of plaintiffs' money for the past two years." Emmenegger, 13 F. Supp. 2d at 1002. The court saw "no legal basis" for such an award and refused "to exercise its equitable power in this way." Id.

law claims for breach of contract would frustrate the key purpose of prejudgment interest under Missouri law: "to compensate for the failure to pay a liquidated amount when due." Prof'l Ins. Managers, Inc. v. RCA Mut. Ins. Co., 884 S.W.2d 332, 338 (Mo. Ct. App. 1994). The fact is, the Company owed Emmenegger and Ritzie redemption value for their PSP shares sixty days after they were fired, regardless of the missteps they made as they went about trying to collect their due.[11] The Company has had the benefit of money belonging to Emmenegger and Ritzie since 1996, and Emmenegger and Ritzie deserve to be compensated for their concomitant loss of use since that time.

Likewise, we find unavailing the argument that Emmenegger and Ritzie should be compensated at the lower federal rate of interest for the time they were pressing their claims under federal-question jurisdiction. The "proper function" of a federal court sitting in diversity "is to ascertain what the state law is, not what it ought to be." Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941). It is not the place of the federal courts to question the rate of interest that the Missouri legislature has determined to be necessary to compensate creditors such as Emmenegger and Ritzie for the loss of the use of their money. Had the federal rate been higher than the state rate in this case, the District Court still would have been obligated to apply the state rate. It is not a matter of "how much"; it is simply a matter of being faithful to considerations of federalism and not tampering with the policy judgments made by a state where that state has the constitutional power to legislate. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

Because Missouri's prejudgment interest statute controls, it is of no consequence that the plaintiffs originally brought suit invoking the District Court's

---

[11]Under the terms of the PSP, the payment date for redeemed shares ordinarily was to be "sixty (60) days after any event requiring payment." Phantom Stock Plan at 6 (Definitions).

federal-question jurisdiction. The Company cites no authority to support its contention that we may ignore the legal nature of the plaintiffs' state-law claims for contract damages and prejudgment interest merely because plaintiffs originally sought compensation by incorrectly asserting claims based on federal law. In those cases to which the Company does direct our attention in support of its arguments, the federal courts in question, unlike the District Court here, had discretion regarding an award of prejudgment interest, that is, the issue of prejudgment interest in the first instance was an equitable one, not a legal one. E.g., Bd. of County Comm'rs v. United States, 308 U.S. 343, 352 (1939) (treaty); Smith v. Am. Int'l Life Assurance Co., 50 F.3d 956, 958 (11th Cir. 1995) (ERISA); NLRB v. W.L. Miller Co., 871 F.2d 745, 750 (8th Cir. 1989) (National Labor Relations Act); In re Burlington N., Inc. Employment Practices Litig., 810 F.2d 601, 609 (7th Cir. 1986) (Title VII), cert. denied, 484 U.S. 821 (1987); Kilpatrick Marine Piling v. Fireman's Fund Ins. Co., 795 F.2d 940, 947 (11th Cir. 1986) ("[A]dmiralty courts have discretion in deciding prejudgment interest," even when the case is brought under diversity jurisdiction.).

We hold that the District Court properly awarded prejudgment interest to Emmenegger and Ritzie under Mo. Rev. Stat. § 408.020, that is, at nine percent from the time payment for the PSP shares was due them.

### III.

After the first appeal, the Company moved this Court to tax as costs to the plaintiffs the supersedeas bond premiums the Company paid in order to prevent immediate execution of the first judgment. Citing Federal Rule of Appellate Procedure 39(e)(3),[12] we directed the Company to take its request to the District

---

[12]"The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule: . . . (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal . . . ." Fed. R. App. P. 39(e)(3).

Court. The District Court deferred decision on the motion until after the merits of the PSP claims had been resolved. For their cross appeal, Emmenegger and Ritzie challenge the District Court's February 25, 2002, post-judgment order awarding the Company $146,432.00, which represents the cost of the supersedeas bond attributable to the ERISA judgment on their PSP claims. We review for abuse of discretion. See United States ex rel. Costner v. United States, 317 F.3d 889, 891 (8th Cir. 2003).

Emmenegger and Ritzie contend that they should not be taxed the bond premiums as costs, claiming they have prevailing party status not only for the first trial but also for the first appeal and the second trial. They contend that because the remand in the first appeal was "on a *procedural* issue" and because they were "significantly prevailing parties" on the merits in the second trial, they should not have to pay the cost of the premium for the bond that secured the first judgment even though that judgment ultimately was vacated. Brief of Appellees/Cross-Appellants at 71, 69.

In support of their position, Emmenegger and Ritzie rely on Berthelsen v. Kane, 907 F.2d 617, 622-23 (6th Cir. 1990) (Order on Denial of Rehearing). In Berthelsen, the Sixth Circuit reversed entry of a default judgment and remanded the case for trial. The court explained that it would not decide at that time whether to award the bond premiums as costs, observing that although the judgment against the defendant was vacated, he had not yet prevailed on the merits. The court said, "In the event that [the defendant] should fail to prevail on the merits, then the appeal merely would have resulted in a further delay of the judgment to which the plaintiff was rightfully entitled." Id. Emmenegger and Ritzie would have us believe that the Berthelsen court was telling the district court that it must order the defendant to pay his own bond costs if he should lose on remand; they draw parallels with the situation here where the defendant Company prevailed on only a minor issue (the Lichtfuss shares). But in fact the Sixth Circuit was very explicit in leaving the decision to the discretion of the district court, as we did earlier in this case: "Pursuant to the

-15-

provision of Rule 39(e), *the district court is free to determine* whether the premium paid on the supersedeas bond should be taxed as costs after there has been a determination on the merits of this case." Id. at 623 (emphasis added).

The question for us then is whether the District Court abused its discretion. The District Court cited Berthelsen when it deferred its decision on the bond until after the trial on the merits of the plaintiffs' state-law claims. As the court explained when it finally awarded bond costs to the Company, the court had wanted to know the outcome of the case because it certainly would have taxed the bond premiums as costs to the plaintiffs had the Company prevailed completely on retrial. The plaintiffs are mistaken if they are inferring from that statement that any other result requires that the Company pay its own bond costs. The District Court always retained discretion to shift the cost of the supersedeas bond. In exercising that discretion, the court pointed out in its order that the Company would not have had to pay for a supersedeas bond in the first instance but for the plaintiffs' pursuit of their claims under the wrong legal theory. The court explained that although the plaintiffs primarily prevailed on remand, the Company's success in appealing the ERISA-based PSP judgment in the first trial resulted in a verdict against the Company in the second trial that was several million dollars less than in the first.

The District Court did not abuse its discretion in taxing the partial cost of the supersedeas bond premiums to the plaintiffs.

IV.

The District Court's denials of the Company's motions for JAML and for a new trial are affirmed. We affirm the order awarding prejudgment interest to Emmenegger and Ritzie and also affirm the order taxing to the plaintiffs the partial cost of the premiums that the Company paid for the supersedeas bond in the first appeal.

-16-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.