In re **LUTHERAN BROTHERHOOD VARIABLE INSURANCE PRODUCTS CO. SALES PRACTICES LITIGATION**

No. 99–MD–1309.

United States District Court, D. Minnesota.

July 11, 2000.

Edward Thomas Wahl, Oppenheimer Wolff & Donnelly, Minneapolis, MN, Patricia A. Bloodgood, Lockridge Grindal Nauen, Minneapolis, MN, for Lutheran Brotherhood Variable Ins. Products Co. Sales Practices Litigation.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the Court upon Plaintiffs' Motion to Remand All Removed Actions or, in the Alternative, to Sever and Remand or Dismiss Without Prejudice the Plaintiffs Who Purchased Only Non–Variable Life Insurance. For the following reasons, Plaintiffs' Motion is denied in its entirety.

## BACKGROUND

The consolidated case currently before the Court arises out of a number of cases filed in both state and federal courts in Minnesota and Ohio.[1] Plaintiffs in each of these actions seek to represent a class of persons who "have [had] an ownership interest in one or more permanent whole life, universal life or variable life policies issued by Defendants" anytime since 1982. (*See* Thompson Complaint at ¶ 1.) Four of these cases, *Thompson, Eifler, Locke,* and *Watson,* were filed in state court and removed to federal court by Defendants Lutheran Brotherhood and Lutheran Brotherhood Variable Life Insurance Company (collectively "Lutheran Brotherhood") on the basis of federal question jurisdiction.[2] Even though the Complaints did not explicitly state causes of action arising under federal law, Defendants justified removal by contending the variable insurance policies at issue were "registered securities" governed by the Securities Act of 1933, 15 U.S.C. §§ 77 *et seq.,* and the Securities Litigation Uniform Standards Act of 1998, P.L. 105–353 ("SLUSA").[3]

---

1. These cases were transferred to this Court on December 23, 1999, by the Judicial Panel on Multidistrict Litigation.

2. One case, *Paulson,* was filed in this Court originally on the basis of diversity of citizenship.

3. Lutheran Brotherhood's original argument—that Plaintiffs' claims were preempted

Since then, the Plaintiffs have been far from complacent about the forum in which they find themselves. The Plaintiffs are before the Court on their third motion to remand these cases to state court. The first motion was filed in *Thompson*, prior to its consolidation with the other cases. Plaintiffs attempted to defeat Lutheran Brotherhood's removal by contending, as they do here, that SLUSA did not apply to variable insurance contracts. On August 6, 1999, United States District Court Judge Donovan W. Frank, who presided over *Thompson* prior to transfer, rejected this argument and denied Plaintiffs' motion to remand.

Faced with this obstacle, the *Thompson* Plaintiffs then attempted to amend their Complaint to remove the counts related to variable insurance policies, in order to deprive the Court of subject matter jurisdiction. Plaintiffs' second motion to remand was filed in conjunction with their motion to amend the Complaint. Initially, Magistrate Judge Arthur J. Boylan recommended *Thompson* be remanded to state court. On January 14, 2000, this Court, however, rejected Plaintiffs' motion to amend the Complaint and remand the case to state court, in large part because Plaintiffs were trying to "forum shop" and avoid the application of federal case law which has made the certification of a class under circumstances such as these difficult.

For the third time, Plaintiffs now move the Court to remand these cases to state court, asserting that federal law simply does not apply to the type of insurance contracts at issue in these cases. However, Plaintiffs have added a new wrinkle in their present motion, related to the recent enactment of the Gramm–Leach Bliley Financial Modernization Act of 1999. In the alternative, Plaintiffs ask the Court to sever the claims of Plaintiffs who own only nonvariable insurance policies and remand those claims to state court.

**STANDARD**

■ Defendants removed these cases to federal court pursuant to 28 U.S.C.

by ERISA—has been disposed of.

§ 1441(a), which allows removal if a case could have originally been brought in federal court. A removed case will be remanded "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction[.]" 28 U.S.C. § 1447(c). The party opposing remand has the burden of establishing federal subject matter jurisdiction. *See In re Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir.1993).

**DISCUSSION**

**A. PSLRA and SLUSA.**

In recent years, Congress passed two statutes designed to alleviate the problems corporations suffered as a result of class action lawsuits. The first of these, the PSLRA, was designed to curb abuse in securities suits, particularly shareholder derivative suits in which the only goal was a windfall of attorney's fees, with no real desire to assist the corporation on whose behalf the suit was brought. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 191 (1st Cir.1999). The PSLRA immediately drove many would-be plaintiffs to file their claims in state court, based on state law, in order to circumvent the strong requirements established by the statute. Motivated by a response to keep such lawsuits in federal court, Congress quickly passed SLUSA in order to "prevent plaintiffs from seeking to evade the protections that federal law provides against abuse litigation by filing suit in State, rather than federal, courts." H.R. Conf. Rep. No. 105–803 (Oct. 9, 1998). With some exceptions, SLUSA made the federal courts the exclusive fora for most class actions involving the purchase and sale of securities. Primarily, SLUSA mandates that any class action based on an allegation that a "covered security" was sold through misrepresentation, manipulation, or deception shall be removable to federal court.

■ Once again, Plaintiffs argue that SLUSA is inapplicable here because varia-

ble insurance policies like the ones sold by Lutheran Brotherhood are not "covered securities" within the meaning of the act. SLUSA defines "covered securities" by referencing § 18(b) of the Securities Act of 1933 ("the '33 Act"). That section was added to the '33 Act in 1996 by the National Securities Markets Improvement Act of 1996 ("NSMIA"), Pub.L. No. 104–290. The NSMIA defines "covered securities" as either registered securities listed on national exchanges or securities issues by "an investment company that is registered [...] under the Investment Company Act of 1940." 15 U.S.C. § 77r(b)(1) and (2).

■ There is no dispute that Lutheran Brotherhood is a registered investment company, or that its variable policies are "securities" for purposes of the NSMIA. Plaintiffs thus concede that the variable policies technically fall within the literal words of the statute. (*See* Pl.s' Mem. at 9–10.) Despite this apparent *fait accompli,* Plaintiffs assert that the NSMIA writ large, as well as the legislative history behind the statutes, compels the conclusion that the these words apply only to mutual funds, not insurance policies. Although a quick reading of NSMIA does appear to indicate that Congress was primarily concerned with the regulation of mutual funds, other statutory language indicates that Congress wished to reform variable insurance products as well. Specifically, NSMIA also amended §§ 26 and 27 of the Investment Company Act of 1940 and regulated certain fees that can be charged by "registered separate accounts funding variable insurance contracts." 15 U.S.C. § 80a–26(e). This is not a case where we should dig through the intricate legislative history behind the NSMIA to discover what Congress truly intended to regulate. It is true that the Supreme Court has from time to time, often using words of the broadest scope, emphasized the power of the courts to look behind the literal words of a statute to effectuate the clear intent of

Congress and the President. *See, e.g., Rector of Holy Trinity Church v. United States,* 143 U.S. 457, 471, 12 S.Ct. 511, 36 L.Ed. 226 (1892) ("It is the duty of the courts ... to say that, however broad the language of the statute may be, the act, although within the letter, is not within the intention of the legislature, and therefore cannot be within the statute.") At the same time, though, the Court has been equally resolute that when a statute's language is clear, the language should be taken literally without probing legislative intent. *See, e.g., Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("we have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there ... When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") Only when a contrary intent is clearly expressed, or a statute is irredeemably ambiguous, should the Court give effect to legislative history behind the words of a statute. *See Ardestani v. INS,* 502 U.S. 129, 135–36, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991).

The definition of "covered securities" clearly includes the variable products sold by Lutheran Brotherhood. The discussion of variable insurance policies in NSMIA demonstrates that Congress viewed variable insurance products as part of, or related to, the problem it wished to correct. There is no internal statutory discord, or ambiguity, which compels the need to examine the statutory history at all. SLUSA applies to the claims based on variable insurance policies because Lutheran Brotherhood is a "registered investment company."[4]

**B. Effect of Gramm–Leach–Bliley.**

■ In this latest attempt to remand these cases to state court, Plaintiffs have

---

**4.** Because this territory has been covered twice before, the Court sees no reason to deal

with this issue in any more detail.

added a new argument to their litany. Plaintiffs argue that through the Gramm–Leach–Bliley Financial Modernization Act of 1999, 15 U.S.C. § 6701 *et seq.* (2000), Congress made clear its "intent to preserve the states' functional regulation of variable insurance products." (Pl.'s Mem. at 11.) In Plaintiffs' view, this clear congressional mandate requires a reading of SLUSA and the PSLRA that preserves the regulation of insurance solely to state lawmakers.

The primary purpose of Gramm–Leach is well-known. Since the 1930's, the Glass–Steagall Act, 12 U.S.C. § 377 *et seq.*, prevented organizations which engage in banking services from also engaging in the issuing, underwriting, sale, or distribution of securities. *See* 12 U.S.C. § 378(a)(1) (repealed 1999). After years of protest and lobbying by the financial services industry, Congress passed Gramm–Leach in late 1999 to repeal Glass–Steagall and once again allow intersectional combination in the financial industry. In the wake of this significant de-regulation, concerns arose about the effect of this federal action on the insurance industry. To assuage these concerns, Congress included in Gramm–Leach clear language that the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, "remains the law of the United States." 15 U.S.C. § 6701(a).

For fifty-five years, the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, has ensured that the states bear the primary responsibility of regulating insurance. McCarran–Ferguson creates a "clear statement" rule of federalism: no federal law will be read to "invalidate, impair, or supersede" state insurance law absent the clearest of Congressional intentions—according to the statute, only when the federal law "specifically relates to the business of insurance." 15 U.S.C. § 1012. The Supreme Court has identified three factors which must be examined in determining whether a federal statute preempts state insurance law: (1) whether the federal statute "specifically relates to the business of insurance"; (2) whether the state law at issue was "enacted for the purpose of regulating the business of insurance"; and (3) whether a proposed reading of a federal statute would "invalidate, impair, or supersede" state insurance law. *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 500, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993).

These factors need not be examined in too much detail here, however, for it is resoundingly clear that McCarran–Ferguson does not bar application of SLUSA to Plaintiffs' claims in these circumstances. Two points are important here. First, the variable insurance policies to which SLUSA allegedly applies are simply not pure insurance products. The Supreme Court has long held that hybrid insurance-investment products, as variable policies could be characterized, cannot be deemed purely "insurance." *See Securities and Exchange Comm'n v. United Ben. Life Ins. Co.*, 387 U.S. 202, 207, 87 S.Ct. 1557, 18 L.Ed.2d 673 (1967). In part relying on this authority, the Securities and Exchange Commission has consistently subjected variable insurance products to federal securities laws. To the extent that an insurance policyholder does not enjoy a fixed benefit, and instead shares in the advantages and risks of equity investments, he owns a security, or at least a product with the qualities of both insurance and a security. *See* SEC Release No. 5360. Under the Court's understanding, these characteristics form the essence of the variable life insurance policies at issue in this case.

Second, even if variable polices were pure "insurance" products, an examination of the second *Fabe* factor compels the conclusion that the application of SLUSA to the variable policy claims does not offend McCarran–Ferguson. As discussed above, concerns about the application of McCarran–Ferguson are implicated when a federal act may invalidate, impair, or supersede a state law enacted for the purpose of regulating insurance. Nowhere in Plaintiffs' Complaints is any such state law relied on or discussed. Plaintiffs' causes of action include fraud, fraudulent induce-

ment, breach of contract, breach of fiduciary duty, unjust enrichment, declaratory relief, reformation, and violations of Minnesota's false advertising, consumer fraud, and deceptive trade practices statutes. These causes of action certainly can apply to insurance policies, and their use may be a form of implicit, private regulation of the insurance industry. But it simply strains credulity to suggest that these general contract, tort, and consumer protection laws were *enacted* for the *purpose* of regulating insurance. McCarran–Ferguson protects states' well-crafted regimes of insurance regulation from unintentional federal intrusion; it does not somehow convert ageless causes of action of wide applicability into exclusively insurance-regulating weapons. *See Meyer v. Employers Health Ins. Co.*, 722 F.Supp. 547, 553 (E.D.Wis.1989) (common law claims may "affect the insurance industry, [but] their origin is no doubt based on general principles of [law].)" None of the cases Plaintiffs cite compel a different conclusion.

## C. Exercise of Supplemental Jurisdiction.

■ Plaintiffs' final argument centers on the status of the claims asserted by Plaintiffs who own non-variable policies instead of variable policies, claims arising from which pose a federal question because of preemption by SLUSA. Because non-variable products possess no attributes of "securities," and thus do not fall under SLUSA's ambit, there is unquestionably no federal question jurisdiction as to these Plaintiffs. Accordingly, Plaintiffs suggest the Court should either sever these Plaintiffs from this case pursuant to Rule 21[5] and remand their claims to state court, or dismiss these Plaintiffs without prejudice so they may file their claims

anew in state court. Lutheran Brotherhood simply asserts that this Court should exercise supplemental jurisdiction—which would be proper—over the non-variable policyholders' state law claims.

This Court is authorized to hear claims based solely on state law when those claims are "so related to claim in the action [over which the court enjoys] original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367. In fact, some scholars have argued that "Congress appears to have created a strong presumption in favor of the exercise of supplemental jurisdiction." John B. Oakley, *Recent Statutory Changes in the Law of Federal Jurisdiction and Venue: The Judicial Improvements Acts of 1988 and 1990*, 24 U.C. Davis L.Rev. 735, 766 (1991). On the other hand, when a case has reached federal court through removal by the defendant, the Court may, in its discretion, "remand all matters in which state law predominates." 28 U.S.C. § 1441(c). The power to remand, however, does not entail the duty to do so.

In support of its request for remand, Plaintiffs raise two factors which arguably support sending the nonvariable claims back to state court. Most fundamentally, Plaintiffs point out that exercising supplemental jurisdiction over the state law claims will subject those who only assert such claims to the time-exacting process mandated by the PSLRA.[6] According to Plaintiffs, claims based solely on state law comprise approximately 90% of the claims asserted by the total Plaintiff class. (*See* Pl.s' Reply Mem. at 2.) Therefore, the vast bulk of the putative class members would see the resolution of their claims slowed by

---

5. "Rule 21 is often used to allow federal courts to escape a multi-party jurisdictional quandary." *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1039 (8th Cir.1999), citing *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 832–33, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989).

6. This includes such actions such as immediately publishing a notice of the pendency of the action, and allowing a 60–day period thereafter in which any member of the purported class may petition the Court to serve as lead Plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(A)(i).

the requirements the PSLRA imposes on the small minority of the class.

Apart from this prudential consideration, however, Plaintiffs address an even more important point. If SLUSA is applicable to the variable policy claims, they argue, the federal and state claims are truly separate and distinct; it would be improper to exercise supplemental jurisdiction over the latter because the federal and state claims do not involve the same case or controversy. In support of their argument, Plaintiffs raise *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031 (8th Cir. 1999), in which the Eighth Circuit mandated remand of state law claims over which the district court had exercised supplemental jurisdiction. At first glance, *Fielder* may appear to compel remand of the nonvariable claims here as well. Under closer scrutiny, however, *Fielder* does not control this case. *Fielder* involved a suit against a corporation that financed installment purchase contracts between car dealers and consumer purchasers. As part of this suit, the district court certified two classes: one composed of persons who had been charged excessive interest on their loans; the other consisted of persons who had been charged excessive "official fees." The first class asserted wholly state-law claims; the second pled a claim for violation of the federal Truth in Lending Act. A much more vexing problem reared its head as well: in order to grant relief to the interest overcharge class, the district court had entered an order requiring the defendant to amend numerous state court judgments assessing these excessive interest charges on the plaintiffs. As the *Fielder* court concluded, the district court's action simply could not be taken without violating the Rooker–Feldman doctrine, which strips federal courts of jurisdiction to hear claims that are "inextricably intertwined" with claims previously adjudicated in state court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Thus, the district court could not exercise supplemental jurisdiction over the state law claims, even though the same transactions, and many of the same plaintiffs, were involved in both classes. Because the district court was *forbidden* from exercising jurisdiction over the state law claims in these circumstances, the only option available was remand of these claims to state court. *See Fielder*, 188 F.3d at 1039.

Despite some dicta that may suggest otherwise, the Rooker–Feldman problem was the insurmountable hurdle to the plaintiffs' claims in *Fielder*. The issue was not a "red herring," as Plaintiffs' suggest. Simply put, the court had no choice but to remand the state law claims to state court. The district court's *discretion* to exercise jurisdiction over the state law claims was not at issue; its very *power* to do so was the question. As such, *Fielder* offers little constructive counsel on this point.

More like this case, Lutheran Brotherhood argues, is *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929 (8th Cir. 1999). *Emmenegger* involved a suit by three plaintiffs against their former employer for violations of two benefit plans. One was a benefits plan governed by ERISA; the other was a phantom stock plan regulated solely by state law. Of the three plaintiffs, one raised solely state law claims. On appeal, the Eighth Circuit "advised" the district court that it could exercise supplemental jurisdiction over the state-law claims—even though the district court had properly applied ERISA to the benefits plan and had thus rendered a "final adjudication" on the federal claims. *See id.* at 936. Except for the fact that the *Emmenegger* plaintiffs were individuals representing themselves only and not a class—a fact that has no importance here—there is no distinction between that case and the one now before the Court.

On balance, the factors involved in this case persuades the Court to exercise its supplemental jurisdiction and keep jurisdiction over both the federal and state claims. As the parties are well aware, this case involves the production of millions of

documents and the deposition of numerous key witnesses. Four times in the past two months this Court has already had to resolve serious disputes concerning the cost of producing documents, the redaction of sensitive information from Lutheran Brotherhood's internal files, and the proper scope of deposition. Disputes such as these are typical of a case this size. Despite our best efforts and most sincere wishes, they will not vanish. Remanding the state law claims could lead to unwieldy problems regarding the coordination of discovery between the federal and state cases, possibly even involving troublesome problems regarding differing rules on what is and is not discoverable. Given the inevitability of conflict during discovery, the Court sees absolutely no reason why these problems should only be magnified by splitting the resolution of this case.

Second, the propriety of retaining jurisdiction over the state law claims is demonstrated by the history of cases similar to the one currently under consideration. *In re Prudential Ins. Co. of America Sales Practices Litigation,* 148 F.3d 283 (3rd Cir.1998), involved a class action against the defendant, Prudential Insurance Company, very much like the case against Lutheran Brotherhood here. In essence, the plaintiffs therein contended that "Prudential management developed and implemented a fraudulent scheme on a companywide and nationwide basis through their use of uniformly deceptive marketing techniques ... [Plaintiffs'] federal claims are based on the same conduct as this, and all class members' state law claims." (Wahl Aff. Ex. H, *Prudential* Plaintiffs' Brief on Appeal at 41.) Denying objections to settlement brought by a number of class members on appeal, the Third Circuit determined that "the nexus between the federal and state claims is so close here that federal jurisdiction is appropriate." *Prudential,* 148 F.3d at 303. More specifically, the *Prudential* court stated:

> The Second Amended Complaint clearly alleges that Prudential engaged in a common scheme to defraud. Each category of claims raised in the Complaint relied on the implementation of that scheme, the training of Prudential's agent in conformity with it, and the use of pre-approved materials to support it. While only one category of claims alleged in the Complaint involved violations of the federal securities laws, all of the claims derive from the same common scheme, and thus from the same "nucleus of operative fact." The implementation of Prudential's scheme resulted in a variety of unlawful transactions does not negate the common basis they all shared. We recognize the need to scrutinize assertions of federal subject matter jurisdiction in these kinds of class actions where there are significant state law claims. But we believe the nexus between the federal and state claims is so close here that federal jurisdiction is appropriate.

*Id.* at 303–304. Not even Plaintiffs here make any allegation that the relevant substantive factual allegations in this case differ from those in *Prudential.* Plaintiffs do, however, raise a number of legal points which arguably render *Prudential* different, such as the fact that *Prudential* was a pre-SLUSA case, or that the McCarran–Ferguson issue was not before that court. (*See* Pls.' Reply Mem. at 5.) These distinctions make no difference. They speak to certain narrow legal distinctions between the two cases, not to any factual difference which would not render the case before the Court just as much the same "case or controversy" as the federal and state claims in *Prudential.*

Finally, the most compelling reason for this Court to exercise supplemental jurisdiction over the state law claims is the most obvious. Plaintiffs brought the cases which comprise this multidistrict action in singular form. That is, they made no assertion that the claims stemming from variable and nonvariable policies did *not* comprise the same case or controversy. Plaintiffs impliedly asserted that they *did* form the same controversy. But for this Court's determination that the claims re-

lating to variable policies are governed by federal law, the issue of remanding part of these cases to state court would not have reared its ugly head. Almost by itself, this appears to be a sound reason for retaining jurisdiction over both the federal and state law claims.

## CONCLUSION

Over the last decade, Congress has significantly amended the procedural hurdles putative class representatives must face in suits involving securities. Although Plaintiffs may not like the result, it is clear that these changes apply equally to suits involving variable life insurance policies. Furthermore, after considering the issues involved in this case and the burdens which would befall Plaintiffs and Lutheran Brotherhood if the state law claims were to be remanded, the Court concludes that exercise of supplemental jurisdiction over the Plaintiffs' state law claims is both legally acceptable and prudentially appropriate.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Remand all Removed Actions, or in the Alternative to Sever and Remand, or to Dismiss Without Prejudice the Plaintiffs Who Purchased Only Non–Variable Life Insurance (Clerk Doc. No. 5) is DENIED; and

2. Plaintiffs have until July 31, 2000, to file amended Complaints that conform to the requirements of the Private Securities Litigation Reform Act of 1996.