[Cite as *Adlaka v. New York Life Ins. & Annuity Corp.*, 2014-Ohio-5404.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| SAT ADLAKA, et al., | ) | |
| | ) | CASE NO.   13 MA 171 |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| NEW YORK LIFE INSURANCE AND | ) | |
| ANNUITY CORP., et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas Court, Case No. 10CV1397.

JUDGMENT:                                        Affirmed.

APPEARANCES:
For Plaintiffs-Appellants:                     Attorney James Gentile
                                                      42 North Phelps Street
                                                      Youngstown, Ohio  44503

For Defendants-Appellees:                  Attorney Gregory Mersol
                                                      Attorney Chris Bator
                                                      1900 East Ninth Street, Suite 3200
                                                      Cleveland, Ohio  44114-3482
                                                      (For New York Life)

                                                      Attorney Steven Janik
                                                      Attorney Colin Sammon
                                                      9200 South Hills Blvd., Suite 300
                                                      Cleveland, Ohio  44144-3521
                                                      (For William Mangano)

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

                                                      Dated:  December 5, 2014

VUKOVICH, J.

{¶1} Plaintiff-appellants Sat Adlaka, et al. appeal the decision of the Mahoning County Common Pleas Court granting summary judgment in favor of defendants-appellees New York Life Insurance and Annuity Corporation, et al. At the heart of this appeal are two insurance policies, one issued in 1994, and one issued in 1999. Appellants set forth one assignment of error, arguing that the trial court erred in applying the statute of limitations for the sale of securities contained in R.C. 1707.43(B).

{¶2} Appellees acknowledge that this statute of limitations does not apply to the claims involving the 1994 whole life insurance policy as that policy is not a security. However, the trial court alternatively ruled that the dispute with the 1994 policy was resolved in a New York class action settlement, and appellant does not contest that alternative ruling on appeal.

{¶3} As to the claims involving the 1999 variable life insurance policy, appellees assert that the trial court correctly applied the statute of limitations in R.C. 1707.43(B) as that policy is a security. We agree that the issuance of the 1999 policy involved the sale of a security and the securities statute of limitations in R.C. 1707.43(B) applied to appellants' claims concerning that policy. Accordingly, we affirm the trial court's decision finding that the claims involving the 1999 policy are time-barred.

## STATEMENT OF THE CASE

{¶4} The plaintiffs are Sat Adlaka, Karen Adlaka, Adlaka & Associates Profit Plan, and The Sat Adlaka Irrevocable Trust. They filed a complaint on April 9, 2010 against New York Life Insurance and Annuity Corporation, William Mangano, and Eagle Strategies LLC and amended the complaint on February 28, 2011 to add New York Life Insurance Company. The complaint asserted claims for breach of contract, fraud, violation of the Consumer Sales Practice Act alleging consumer fraud by way of unfair and deceptive acts, and a Chapter 1707 securities law violation involving a breach of fiduciary duty due to the breach of contract, misrepresentations, and non-disclosures. The claims revolve around the sale of a 1994 whole life insurance policy

and the sale of a 1999 variable life insurance policy. The plaintiffs say they believed the policies had fixed premiums, i.e. the amount they paid the first year would be due each year to keep the same level of coverage.

{¶5} The 1994 whole life insurance policy had a base amount of $300,000 with a $1.2 million term rider. The December 1993 application for the policy listed an estimated annualized premium of $4,800. A letter provided the next month contained projected premiums and had an illustration for a $1.5 million benefit and stated that an annual premium below $7,600 will not carry the benefit of $1.5 million beyond twenty years, requiring a substantial increase in outlay. When the policy was issued on April 15, 1994 by New York Life Insurance Company, it showed a base premium of $4,579 set to increase to $9,058 in 2009. The premium for the rider was fixed for the first five years and then increased as set forth in the rider schedule. The policy provided a ten-day right to examine the policy and seek a refund. A delivery receipt was signed by Karen Adlaka on April 21, 1994.

{¶6} A class action lawsuit was certified in New York in the case of *Willson v. New York Life Ins. Co.*, Civ. No. 94/128704 due to allegations of misrepresentation and "vanishing premiums" concerning the 1994 policy. The suit was settled, releasing the companies and agents from liability for the settled claims, and the court entered judgment on the settlement in 1996. The class members could choose from certain options as the remedy such as an optional premium loan, enhanced value policy, enhanced value annuity, or alternative dispute resolution.

{¶7} The Adlakas were a beneficiary of the settlement and brought a January 1997 letter concerning the settlement to agent Mangano in 1998. The letter mentioned that they had chosen the enhanced value annuity. Implementation of that option would have required them to cash in the 1994 policy and put it into an annuity, which would have caused them to lose the death benefit. Instead of applying for one of the choices under the settlement, the Adlakas kept their old policy and applied for an additional policy on January 18, 1999.

{¶8} This was a variable life insurance policy with a base amount of $1 million, a term rider of $3 million, and $1 million first-to-die term rider. Specifically,

the application sought to purchase "SVUL," which matches the illustration and prospectus concerning a survivorship variable universal life insurance policy. The application listed an estimated annualized premium of $14,400.

{¶9} The policy was issued on April 26, 1999, this time by New York Life Insurance and Annuity Corporation. The delivery receipt was signed on June 8, 1999, wherein it was acknowledged that the policy value is based on guaranteed and non-guaranteed fluctuating elements. The policy provided a twenty-day right to examine and seek a refund. Although Mrs. Adlaka checked the premium being charged and may have glanced through the policy, neither of the Adlakas read the policy.

{¶10} The policy stated that it had a target premium of $19,846 and a monthly premium of $1,554.25. It advised that the amount of premiums may be increased or decreased and referred to a policy data sheet with illustrations. It also stated that policy values are based on investment performance of a Separate Account so that payment of premiums will not guarantee the policy will remain in force to a certain date. Regarding that Separate Account, the Adlakas completed a premium allocation form, wherein they chose an investment vehicle for the premiums. This form also advised that variable benefits are not guaranteed as they are based on the investment performance of the Separate Account.

{¶11} Over the next decade, they paid a minimum premium of approximately $14,000 per year. At various times, Mangano advised them to put more cash into the policies, but they did not do so. In late 2007 and early 2008, the Adlakas received premium notices explaining that additional funding was needed. The premium for the base coverage in the 1994 policy was increasing to $9,058 per year. The 1999 policy was in danger of lapsing, and a $12,381 payment was requested in a February of 2008 letter, explaining that variable life policies that are maintained at cash surrender value just sufficient to cover fees or that are otherwise minimally funded are more likely to lapse in the event of a market decline.

{¶12} The Adlakas wrote to the company in April 2008, mentioning a March 24, 2008 meeting with Mangano. They met with Mangano again in May 2008. Their

complaint states that the true nature of the premiums was not disclosed to them until May 9, 2008, when the company responded and provided illustrations. In 2009 with a new insurance agent, they chose to cancel the $1.2 million rider in the 1994 policy but kept the base $300,000 policy. And, they filed the within complaint on April 9, 2009.

**{¶13}** The defendants filed motions for summary judgment. With regards to the 1994 whole life policy, it was alleged that: the claims were barred by the settlement and release; the fifteen-year statute of limitations for written contracts expired; the four-year statute of limitations for fraud expired; and the claim involving Chapter 1707 securities violations failed because the whole life policy was not a security.

**{¶14}** With regards to the 1999 variable life policy, it was urged that the item was a security, the statute of limitations for the sale of securities in R.C. 1707.43(B) had run, and said statute applies to all four claims involving the 1999 policy as they were all interwoven with the security sale. As to the Consumer Sales Practices Act claim made for both the 1994 and 1999 policies, it was also stated that the two-year statute of limitations under that act expired and the act does not cover insurance sales in any event.

**{¶15}** The plaintiffs responded that the *Willson* settlement should not be a shield as Mangano "intentionally misdirected" the Adlakas into "another useless policy" with premium payments that "would ultimately cause the policy to lapse" as escalating premiums were required. The plaintiffs attached a letter from the insurance company, showing that class members are no longer eligible for benefits under the settlement. The plaintiffs asserted that the premiums were to be fixed. They complained that the premiums were not clearly listed in the policy because premium cost was shown based on increments of $1,000 and that the hypotheticals in the illustrations were misleading.

**{¶16}** The plaintiffs suggested that the critical date for the statute of limitations was in May of 2008. They asserted that the action was on a contract (with a fifteen-year statute of limitations on accrual) and for fraud (with a four year statute of

limitations from discovery). They noted that fifteen years had not elapsed since the 1999 contract and that the base of the 1994 policy was still in effect. They did not mention the statute of limitations for their securities or consumer sales claims.

{¶17} On June 15, 2012, the trial court sustained the defendants' motion for summary judgment on the plaintiffs' claims involving the 1994 whole life policy, ruling that the dispute was resolved in the *Willson* class action settlement. The court denied summary judgment on the plaintiffs' claims involving the 1999 variable life policy and opined that the preliminary matter of the agent selling the 1999 policy should be first pursued through an action to enforce the settlement in a proper forum. The entry then set the case for a status hearing.

{¶18} After that status hearing, the defendants filed a motion asking the court to reconsider the ruling denying summary judgment as to the claims concerning the 1999 variable life policy, pointing out that they were satisfied with the grant of summary judgment in their favor on the claims involving the 1994 whole life policy. The defendants' mentioned that the court suggested at the status conference that it believed the plaintiffs could pursue a remedy in New York on the 1999 policy, but the parties agreed that no further remedies are available in the *Willson* case after all these years. The defendants also noted that they would merely assert the same defenses in any New York case that it was asserting here.

{¶19} Their motion noted that the court's ruling with regard to the 1999 policy did not address the summary judgment arguments. The court was asked to grant summary judgment on the plaintiffs' claims involving the 1999 policy on the grounds that such claims are barred by the statute of limitations in R.C. 1707.43(B). It was reasserted that the 1999 variable life policy was a security with a statute of limitations being the shorter of two years from when plaintiff should have known of the issue or five years from the date of the sale. As the suit was filed more than ten years from the date of the sale, it was urged that the statute had run as to all claims dealing with the 1999 policy.

{¶20} In response, the plaintiffs essentially agreed with the defendants' contention that the issues with the 1999 policy should proceed in this court instead of

New York. They acknowledged that the 1999 policy is the type that generates cash by the premium payments which can be invested in a number of separate accounts in the insurance company's portfolio which typically consists of stocks and bonds. Still, they concluded that labeling the sale of this policy a sale of securities "stretches the imagination." Although the fourth claim of their own complaint raises Ohio securities law and cites Chapter 1707, the plaintiffs stated (in a motion to disregard the defendants' reply) that said law is inapplicable to this case.

{¶21} On October 30, 2013, the trial court granted summary judgment "for the reasons set forth in the June 15, 2012 Judgment Entry" (which would be the decision that the claims concerning the 1994 policy were resolved by the class action settlement in *Willson*) "and on the basis that both claims involving the 1994 whole life policy and the 1999 variable life policy are time barred by R.C. 1707.43(B)." The plaintiffs filed a timely notice of appeal from this entry.

ASSIGNMENT OF ERROR

{¶22} Appellants' sole assignment of error provides:

{¶23} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE ISSUE OF THE STATUTE OF LIMITATIONS."

{¶24} We initially note that appellants have abandoned their third cause of action relating to the Consumer Sales Practices Act as their response to summary judgment, response to the motion to reconsider, and brief on appeal do not mention it.[1] And, they essentially acknowledge that their fourth cause of action, relating to Chapter 1707, would be barred by the securities statute of limitations in R.C. 1707.43(B).

{¶25} Even though that fourth cause of action alleged a violation of Ohio's securities laws in Chapter 1707, appellants insist on appeal that the "issuance" of the "policies" was not the "sale" of "securities" in an attempt to direct the statute of

---

[1]The defendants propose that the CSPA claim would fail because: said act does not apply to insurance sales; the act has a two year statute of limitations from the date of occurrence with no discovery rule (except in case of rescission, which is admittedly not sought here); the claim is inextricably woven with the sale of securities and thus falls under the securities statute of limitations,

limitations in R.C. 1707.43(B) away from their contract and fraud claims. Even if the 1999 policy involved the sale of securities, appellants argue that the statute of limitations for a security sale would not apply to their common law contract or fraud claims, urging the application of the fifteen-year statute of limitations for written contracts and the four-year statute of limitations for fraud (with application of the discovery rule to the fraud claim).

**{¶26}** Appellants observe that the defendants agreed that the 1994 whole life policy did not involve the sale of a security and thus the trial court should not have ruled that the securities statute of limitations in R.C. 1707.43(B) barred the claims dealing with both the 1994 and the 1999 policy. Notably, the trial court was only asked to reconsider the denial of summary judgment on the 1999 policy, and it was unnecessary to add an alternative and surplus basis for granting summary judgment on the claims involving the 1994 policy. Although it is undisputed that the 1994 policy did not involve a security and thus the court should not have stated that it was time-barred by the particular statute of limitations dealing with securities in R.C. 1707.43(B), this was merely an alternate holding.

**{¶27}** The trial court specifically stated that summary judgment was granted for the reason in its earlier entry. That earlier entry granted summary judgment to the defendants only on the plaintiffs' claims involving the 1994 whole life policy on the basis that such dispute was resolved in the *Willson* class action settlement. The defendants urge that the trial court correctly held that the 1994 claims were barred by the class action settlement.[2] However, the appellants do not assign this holding as error.

---

as they argue more fully below with regards to the contract and fraud claims being governed by the securities statute of limitations .

[2]The defendants also suggest that we could uphold summary judgment on statute of limitations grounds raised but not reached by the trial court: fifteen-year statute of limitations for contract ran by the time of the April 9, 2010 complaint; four-year statute of limitations expired as they should have discovered any issue upon the delivery of the policy which they failed to read; the 1994 whole life policy was admittedly not a security so the fourth claim under Chapter 1707 securities law fails as to that policy; and the applicable CSPA arguments outlined above.

**{¶28}** Accordingly, we move to the question of whether the statute of limitations in R.C 1707.43(B) is applicable to the plaintiffs' claims concerning the 1999 policy. This statute of limitations provides:

**{¶29}** "(B) No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707. of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than five years from the date of such sale or contract for sale, whichever is the shorter period."[3]

**{¶30}** The defendants state that the plaintiffs had reason to know of the issues they now raise at the time they received their policy in 1999. The policy asked appellants to examine it and stated that it can be returned for a refund within twenty days of delivery. And, they signed a delivery receipt acknowledging various terms such as that the policy value is based on guaranteed and non-guaranteed fluctuating elements. As the defendants point out, however, resolution of the dispute over when the plaintiffs had reason to know is irrelevant to the application of R.C. 1707.43(B) under the facts of this particular case.

**{¶31}** That is, regardless of when the plaintiff had reason to know of the issues raised for purposes of the two-year portion of the statute, the statute requires the application of the shorter of that period or five years from the date of the sale or contract of sale. This means five years from the date of sale is the maximum time (in cases where discovery is alleged to have occurred later than five years from the date of sale).

**{¶32}** By the time the April 9, 2010 complaint was filed, five years since the date of the 1999 sale (or contract for sale) had long elapsed. Appellants do not dispute this particular conclusion. The issue is thus whether the 1999 policy involved

---

[3]The statutory period of five years (from date of sale or contract of sale) was previously four years, but was increased to five years in 2003. Appellants use the shorter four-year period, and the defendants use the longer five-year period. The difference is irrelevant here as the defendants' use of the longer period (in favor of the plaintiffs) avoids the issue.

the sale of a security and then whether the common law breach of contract and fraud claims were subject to the securities statute of limitations in R.C. 1707.43(B) (or whether the standard statutes of limitations for contract and fraud should be applied). If the issuance of the 1999 policy constituted the sale of a security and the statute of limitations in R.C. 1707.43(B) applies to the contract and fraud claims, then the action is time-barred.

PRODUCT REVIEW

**{¶33}** We begin by setting forth a brief overview of certain insurance products to highlight the characteristics of a variable policy. A variable life product falls under the cash value type of policy, as opposed to term insurance, which has no cash value. For term life insurance, the premium, death benefit, and term of existence are set at the beginning.

**{¶34}** A cash value policy has a death benefit and a savings component which grows tax deferred. This category includes whole life, universal life, and variable life. Whole life is the most basic type of a cash value policy. It guarantees a death benefit and a cash value. Universal life does not guarantee the cash value, and it is more flexible as there may be the ability to increase or decrease the premium and benefit.

**{¶35}** Variable life insurance invests the bulk of the premium into one or more separate accounts with a choice to allocate the money into various investment options such as mutual funds containing stocks or bonds, the performance of which helps fund the cash value. The cash value and death benefits can fluctuate depending on one's investment portfolio performance. Thus, one may have to pay extra premiums to maintain the death benefit. Sometimes premium payments can be made from the cash value to lower the premium but this can result in a need to pay more than one can afford to keep the policy in effect.

**{¶36}** Besides a regular variable life insurance policy there is a subtype called variable universal life insurance, which allows the policyholder to alter the insurance coverage. On all variable life products, the policyholder bears the investment risk so that if the investment performs poorly, higher premiums must be paid to sustain the

policy. This is often the case during periods of market downturn, e.g. the 2007-2008 financial crisis and resulting recession. *See, e.g,* www.insurance.ohio.gov. (explaining at various places the different categories of life insurance).

<u>IS THE 1999 POLICY A SECURITY?</u>

**{¶37}** Pursuant to R.C. 1707.01(B), a security is defined as:

"any certificate or instrument, or any oral, written, or electronic agreement, understanding, or opportunity, that represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person [which includes a corporation] or of any public or governmental body, subdivision, or agency. It includes shares of stock, certificates for shares of stock, an uncertificated security, membership interests in limited liability companies, voting-trust certificates, warrants and options to purchase securities, subscription rights, interim receipts, interim certificates, promissory notes, all forms of commercial paper, evidences of indebtedness, bonds, debentures, land trust certificates, fee certificates, leasehold certificates, syndicate certificates, endowment certificates, interests in or under profit-sharing or participation agreements, interests in or under oil, gas, or mining leases, preorganization or reorganization subscriptions, preorganization certificates, reorganization certificates, interests in any trust or pretended trust, any investment contract, any life settlement interest, any instrument evidencing a promise or an agreement to pay money, warehouse receipts for intoxicating liquor, and the currency of any government other than those of the United States and Canada, but sections 1707.01 to 1707.45 of the Revised Code do not apply to the sale of real estate."

**{¶38}** A "sale" has the full meaning applied by courts, including every disposition or attempt to dispose of a security or of an interest in a security. R.C.

1707.01(C)(1). And, a sale includes a contract to sell, an exchange, an attempt to sell, an option of sale, a solicitation of a sale, a solicitation of an offer to buy, a subscription, or an offer to sell, directly or indirectly, by agent, circular, pamphlet, advertisement, or otherwise. *Id.* "Sell" means any act by which a sale is made. R.C. 1707.01(C)(2).

{¶39} Appellants argue that this is a life insurance contract, not a security, stating that the policy is not labeled as a security and uses the term variable life "insurance" benefit. They believe the fact that an "issue" date is utilized rather than a "sale" date shows that it was mere insurance rather than the sale of a security.

{¶40} The defendants respond that the mere fact that the contract involves a life insurance benefit does not mean that it is not a security. They explain that the policy was sold by New York Life Insurance and Annuity Corporation rather than New York Life Insurance Company because it is a security, which requires a licensed security dealer and salesperson.

{¶41} The defendants also point to the premium allocation form signed by the Adlakas prior to the issuance of the policy containing their choice of mutual funds in the Separate Account. Appellants urge that the allocation form itself is not part of the policy. Still, this does not mean that it cannot be used as summary judgment evidence to support the argument that the issuance of the policy involved the sale of security. And, the policy itself referred to the Separate Account and explained its non-stable valuation.

{¶42} The defendants emphasize that the test for a security involves the question of who bears the investment risk. Notably, the premiums of the 1999 policy were invested in mutual funds holding items such as equities pursuant to the purchaser's chosen allocation, and the risk was on the purchaser as to whether returns are realized. To the contrary, in the whole life policy (which is not a security), the premiums were paid to the insurer, who assumed the investment risk as to those premiums.

{¶43} The defendants outline the various features of the policy establishing that it involves the sale of a security. To recap, the policy stated in bold that the

variable life insurance benefit of the policy may increase or decrease depending on the investment experience of the Separate Account and the life insurance benefit option selected. It also stated in bold that the cash value allocated to the Separate Account will vary from day to day reflecting the investment experience of that Separate Account, referring to the section providing the method to determine cash value and stating that there was no guaranteed minimum cash value.

{¶44} The policy spoke of planned monthly premiums and a target annual premium. It stated, in all capital letters, that coverage will expire when the cash value less surrender charges and accrued interest is insufficient to cover the monthly deduction. The policy warned that because policy values are based on investment performance of the Separate Account, payment of premiums in any frequency or amount will not guarantee that the policy will remain in effect to the date shown. The policy stated that the amount of planned premiums may be increased or decreased subject to the limits set by the company.

{¶45} It was explained that the premium payments are allocated after some listed charges to the Separate Account and the Fixed Account in accordance with the premium allocation election, referring to the policy data page. The policy also explained that the Separate Account invests its assets in shares of one or more mutual funds and the value is determined on each day the New York Stock Exchange is open for trading.

{¶46} Moreover, the delivery receipt signed by the Adlakas, stated that they received and reviewed the illustration and understood the values were based on guaranteed and non-guaranteed elements and that a reduction in non-guaranteed elements could affect future values of the policy. The illustration stated that the agent must be a NYLIFE Securities Registered Representative to present this illustration and sell this product. It also explains that the results are based on hypothetical rates of return and that a zero in the benefit column shows the first year the policy will terminate unless additional premiums are paid. Finally, the application sought to purchase "SVUL," which coincides with the "Survivorship Variable Universal Life" prospectus accompanying the illustration provided to the plaintiffs.

**{¶47}** The defendants cite various cases holding that a variable life insurance policy is a security and urge that it qualifies as a security under Ohio law as well as federal law. It has been said that the goal of Ohio securities law, of preventing fraudulent exploitation of the public in the sale of securities, is best served by applying a broad definition of securities when reading R.C. 1707.01(B). *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 814 N.E.2d 44, ¶ 9. The first sentence of the statutory definition provides a general definition, and the second sentence provides a list of items that are presumptively securities. *Id.* at ¶ 8.

**{¶48}** Both the federal definition and Ohio's definition of a security includes a stock or bond. R.C. 1707.01(B); 15 U.S.C. 77(a)(1). And, the right to purchase a stock or bond is also pertinent in both systems. *See* R.C. 1707.01(C)(1) (sale of a security includes a contract to sell or solicitation of sale of a security, including a stock, bond, etc.); 15 U.S.C. 77(a)(1) (right to purchase a stock, bond, or other security). Moreover, both definitions include an investment contract in the list of what is considered a security. R.C. 1707.01(B); 15 U.S.C. 77(a)(1).

**{¶49}** Various federal courts have held that a variable life insurance policy falls under the federal definition of a security. *See, e.g., Lincoln Natl. Life Ins. Co. v. Bezich*, 610 F.3d 448, 451 (7th Cir.2010); *Herndon v. Equitable Variable Life Ins. Co.*, 325 F.3d 1252, 1253 (11th Cir.2003); *Araujo v. John Hancock Life Ins. Co.*, 206 F.Supp.2d 377, 381 (E.D.N.Y.2002) (variable insurance product is a security because it invests in mutual funds and plaintiff invested premiums in a separate account regulated by the SEC). *See also In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Practices Litig.*, 105 F.Supp.2d 1037, 1040-41 (D.Minn.2000) (holding that variable insurance policies are "covered securities" under SLUSA and no dispute that such policy is a security; non-variable policies are not securities); *Lasley v. New England Variable Life Ins. Co.*, 126 F.Supp.2d 1236, 1238-39 (N.D.Cal.1999) (distinguishing between ordinary life insurance and variable life insurance for purposes of whether a policy was a security).

**{¶50}** Prior to the holdings cited above on variable life products, the Supreme Court had determined that a variable annuity with a five-year term policy was not

exempt from the Securities Act merely because it contained insurance. *See SEC v. Variable Annuities Life Ins. Co.*, 359 U.S. 65, 70-71, 79 S.Ct. 618, 3 L.Ed.2d 640 (1959) fn. 13 (pointing to the investment of premiums in equities, the lack of guaranteed fixed income, and the placement of risk on the investor and then suggesting that the variable annuity fell under the "investment contract" portion of the definition for a security).

**{¶51}** Everyday insurance literature speaks of a variable life policy as a "securities contract," noting that it is governed by the prevailing securities law, accompanied by a prospectus, and sold by an agent with a valid state license to sell life insurance and a NASD license. *See, e.g.,* www.investopedia.com/articles/pf/07 (Variable vs. Variable Universal Life Insurance); www.kiplinger.com/article/insurance/ T034-C000-S001-variable-life-insurance ("Policyholders' investment funds are segregated from the insurance company's general accounts so that they reflect the actual experience of the investments chosen. Because you decide where your money is invested and bear the risk of those investments, variable life is considered a security and is the only kind of life insurance sold by prospectus").

**{¶52}** We conclude that although a variable life insurance product has components of an insurance policy, it also has components of a security, and it is a single product, which as a whole falls under the rubric of a security. *See Lincoln Natl. Life Ins. Co.*, 610 F.3d 448. *See also Ouwinga v. Benistar 419 Plan Services, Inc.*, 694 F.3d 783 (6th Cir.2012) (stating that the plaintiffs' "claims are based on the purchases of variable life insurance policies which, because they are 'variable,' qualify as securities."). Consequently, the 1999 variable life policy is a security and the application and subsequent issuance of a policy constituted the sale of a security. This leads to the next question of whether the statute of limitations in R.C. 1707.43(B) is applicable to the fraud and breach of contract claims.

## ARE THE FRAUD AND BREACH OF CONTRACT CLAIMS SUBJECT TO SECURITIES STATUTE OF LIMITATIONS?

**{¶53}** Appellants state that their first and second claims did not seek to recover damages for violation of Chapter 1707 (as said recovery was only in their

fourth claim). It is urged that as they are merely seeking to recover for common law fraud and breach of contract, the statutes of limitations for those claims should apply. Appellants point out that the fifteen-year statute of limitations for written contracts had not expired at the time of the April 2010 complaint. *See* R.C. 2305.06. As to common law fraud, the statute of limitations is four years after the cause of action accrued, which involves when the plaintiff discovered or should have discovered the fraud. *See* R.C. 2305.09(C). Appellants assert that the accrual would not have occurred until their alleged later discovery of increased premiums, which they claim happened in 2008.

{¶54} The defendants respond that the breach of contract and fraud claims are inextricably woven with the fraudulent sale of a security. It is thus urged that those claims are thus subject to the statute of limitations in R.C. 1707.43(B), which applies to an "action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707. of the Revised Code * * *." A violation of Chapter 1707 can take many forms. For instance:

> "No person shall knowingly make or cause to be made any false representation concerning a material and relevant fact, in any oral statement or in any prospectus, circular, description, application, or written statement, for any of the following purposes: * * * (4) Selling securities in this state; (5) Advising for compensation, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities."

R.C. 1707.44(B):

{¶55} And, no person in selling securities shall knowingly engage in any act or practice that is declared illegal, defined as fraudulent, or prohibited by Chapter 1707. R.C. 1707.44(G). No investment adviser or representative of such shall: employ any device, scheme, or artifice to defraud a person; engage in any act, practice, or course of business that operates or would operate as a fraud or deceit on a person; or engage in any act, practice, or course of business that is fraudulent, deceptive, or manipulative. R.C. 1707.44(M)(1)(a),(b),(d).

**{¶56}** No person in soliciting clients shall make an untrue statement of a material fact or omit to state a material fact necessary in order to make a statement made not misleading in light of the circumstances. R.C. 1707.44(M)(3). *See also* R.C. 1707.44(J) (no person shall make, issue, publish, or cause to be made, issued or published any statement or advertisement as to the value of securities or as to alleged facts affecting the value of securities with purpose to deceive, while knowing such statement or advertisement is false in any material respect); R.C. 1707.41(A) (relying on written circular, prospectus, or advertisement and sustaining damages due to false material statement therein or omission of material facts).

**{¶57}** Here, the contract claim in the complaint alleged that the defendants made inaccurate statements and misrepresentations and engaged in certain acts, practices, and transactions resulting in incomplete disclosures as to the premium payments and costs of the policy. Notably, punitive damages were specifically sought within the contract claim. The fraud claim in the complaint alleged that fraudulent statements and misrepresentations induced the plaintiffs to purchase the policy. The third claim alleged unfair, deceptive, and unconscionable acts. And, the fourth claim alleged Chapter 1707 securities violations via misrepresentations and breach of fiduciary duty.

**{¶58}** In ascertaining the applicability of the securities statute of limitations to claims in a complaint, the court is to look at the actual nature or subject matter of the case rather than the form in which the action is pled. *Goldberg v. Cohen*, 7th Dist. No. 01CA49, 2002-Ohio-3012, ¶ 13. Thus, a plaintiff cannot cloak a claim predicated on the sale of securities in a common law action in order to avoid the specific statute of limitations in R.C. 1707.43(B). *See id.* In *Goldberg*, we concluded that the complaint alleging common law fraud was predicated on the sale of securities and thus the applicable statute of limitations was found in R.C. 1707.43, not R.C. 2305.09. *Id.*

**{¶59}** Appellants cite the Sixth Circuit's *Nickels* case, which stated that the limitations period in former R.C. 1707.43 did not apply to all cases of securities law fraud, including those based solely upon common law fraud. *Nickels v. Kohler Mgmt.*

*Co.*, 541 F.2d 611, 616 (6th Cir.1976) (applying Ohio law). However, as appellees point out, *Nickels* has been overruled. *Metz v. Unizan Bank*, 649 F.3d 492, 499 (6th Cir.2011) (stating, "we overruled *Nickels* in *Wyser–Pratte Mgmt. Co.*, 413 F.3d at 561, determining that Ohio law applies the blue sky limitations period to all claims of fraud arising out of the sale of a security, not just those alleging violation of Ohio's blue sky law.").

**{¶60}** The Sixth Circuit has stated: "Ohio law is clear that [where] fraud claims arise out of or are predicated on the sale of securities, they are governed by the specific statute of limitations set forth in Ohio Rev.Code § 1707.43(B); not the four-year general statute of limitations for fraud claims found in Ohio Rev.Code § 2305.09." *Id.*; *Wyser–Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 561 (6th Cir.2005), citing *e.g. Goldberg*, 7th Dist. No. 01CA49; *Lynch v. Dean Witter Reynolds, Inc.*, 134 Ohio App.3d 668, 731 N.E.2d 1205 (2d Dist.1999); *Hater v. Gradison Div. of McDonald & Co.*, 101 Ohio App.3d 99, 655 N.E.2d 189 (1st Dist.1995).

**{¶61}** Moreover, in our *Helman* case, the appellants argued that the statute of limitations for contracts should apply to their breach of contract claim regarding a subscription agreement. The appellees argued that the statute of limitations in R.C. 1707.43(B) applied to all claims arising out of or predicated upon the sale of securities.

**{¶62}** This court reviewed the actual nature or subject matter of the case as opposed to the form in which the action was pled. *See Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 243, 743 N.E.2d 484 (7th Dist.2000), citing *Lawyers Coop. Pub. Co. v. Muething*, 65 Ohio St.3d 273, 277, 603 N.E.2d 969 (1992). We then agreed with the appellees and applied the securities statute of limitations to the breach of contract cause of action. *Id.* at 243, citing *Hater*, 101 Ohio App.3d at 113 and *Lynch*, 134 Ohio App.3d at 672-673.

**{¶63}** In response to the argument that R.C. 1707.43 was not meant to replace the remedies provided by common law contract actions, this court concluded that a plain reading of the predicate statute of R.C. 1707.40 indicates that common

law remedies are governed by the statute of limitations provided in R.C. 1707.43. *Id.* at 245. The former statute provides: "sections 1707.01 to 1707.45 of the Revised Code create no new civil liabilities, and do not limit or restrict common law liabilities for deception or fraud *other than as specified in * * * 1707.43 * * *.*" (Emphasis added). R.C. 1707.40.

**{¶64}** We also stated that the specific statute of limitations would prevail over a more general statute, explaining that the contract claim overlaps with the securities violations. *Id.* at 245. We concluded that regardless of whether appellants had to prove a specific violation of Chapter 1707, their contract claim was "still based upon and inextricably interwoven with a fraudulent sale of securities. Therefore, the statute of limitations in R.C. 1707.43 applies to appellants' cause of action sounding in contract." *Id.* at 244.

**{¶65}** In the *Lynch* case we cited, the Second District held: "if the investors claims can be characterized both as violations of the specific provisions of R.C. Chapter 1707 and as breaches of their contracts with Dean Witter, the limitations period set forth in R.C. 1707.43 prevails over the general limitations period for breach of contract claims." *Lynch*, 134 Ohio App.3d at 671. And, the Court concluded: "although styled as a breach of contract claim arising after the purchase of the securities, the investors' claims actually related to the purchase of the securities and therefore fell within the ambit of R.C. 1707.43. As such, the claims were barred by the statute of limitations and were properly dismissed." *Id.* at 672-673.

**{¶66}** In the *Hater* case we cited, the plaintiff alleged various claims including breach of contract, fraud, and securities law violations. The trial court granted summary judgment finding that the securities claims were time-barred and the contract and fraud claims arose from the sales of securities and were hence governed by the statute of limitations in R.C. 1707.43(B) as well. *Hater*, 101 Ohio App.3d at 105-106.

**{¶67}** The First District affirmed these decisions. As to fraud, the court stated: "despite counsel's best efforts to portray them as something else, the allegations of fraud are inextricably interwoven with the sale of the partnership units,

and thus we hold that the trial court did not err when it found that they were controlled by the limitations period contained in R.C. 1707.43." *Id.* at 113, citing *Katz v. Genninger*, 1st Dist. No. C-840219 (Jan. 31, 1985) (which held that although claims based on common law fraud are generally governed by the four-year period in R.C. 2305.09, "when a claim grounded in common law fraud arises out of a sale made in violation of R.C. 1707.01 et seq., the statute of limitations governing the claim is that provided in R.C. 1707.43."), citing R.C. 1707.40 and 1707.43. The *Hater* court likewise held that the contract claims were predicated upon the sale of securities in violation of Chapter 1707 and thus subject to the securities' statute of limitations. *Id.* at 114.

**{¶68}** Thus, where the allegations in the complaint are "inextricably interwoven" with the sale of securities, R.C. 1707.43(B) is the overriding statute. *See Ryan v. Ambrosio*, 8th Dist. No. 91036, 2008-Ohio-6646. In *Ryan*, the Eighth District concluded that claims for common law fraud, negligent misrepresentation, breach of fiduciary duty, breach of contract were all subject to R.C. 1707.43(B) statute of limitations (as was the separate claim alleging a securities violation).

**{¶69}** We conclude that the plaintiffs' contract and fraud claim here were predicated on the sale of securities and deal with deceptive or manipulative acts in such sale and thus are subject to the statute of limitations in R.C. 1707.43(B).[4] The trial court's decision applying the statute of limitations to the claims involving the 1999 policy is thus upheld.[5]

---

[4]As aforementioned, the third claim, although not briefed by appellants, is also predicated on deception in the sale of securities. And, there is no dispute that the fourth claim, which specifically cited Chapter 1707, is barred by the statute of limitations in that same chapter.

[5]Appellants' reply brief raises some issues not raised below or in the original appellants' brief. For instance, they claim that if the policy was a security, the defendants would have asked to have the case removed to federal court, suggesting federal court would have exclusive jurisdiction upon such removal. Although appellants are the ones who brought the action in state court and assert no federal claims, they do not analyze how an implicit federal cause of action could apply. Nor do they analyze the effect of a failure to seek removal.

Appellants' reply also states for the first time that the statute of limitations in R.C. 1707.43(B) deals only with rescission, citing to division (A). However, these are separate sections, and (B) specifically deals with not only an action for recovery of the purchase price as provided in (A) but also with any "other action for any recovery based upon or arising out of a sale or contract for sale in violation of Chapter 1707."

## CROSS-ASSIGNMENT OF ERROR OF DEFENDANT MANGANO

**{¶70}** The insurance agent has asserted the following as a cross-assignment:

**{¶71}** "THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLEES' MOTION TO STRIKE THE EXPERT NOTARIZED REPORT OF SCOTT DUKO, JD SUBMITTED IN OPPOSITION TO APPELLEES' MOTION FOR SUMMARY JUDGMENT."

**{¶72}** Mangano believes that the trial court implicitly denied his motion to strike the report of appellants' expert. He states that the provision of the expert report was untimely and prejudicial. He states that the deadline to exchange expert reports was June 15, 2011 and alleges that the plaintiffs did not seek to extend that deadline.

**{¶73}** Appellants respond that this cross-assignment is improper in the absence of the filing of a notice of cross-appeal. App.R. 3(C) provides:

**{¶74}** "(1) Cross appeal required. A person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order or, in the event the judgment or order may be reversed or modified, an interlocutory ruling merged into the judgment or order, shall file a notice of cross appeal within the time allowed by App.R. 4.

**{¶75}** (2) Cross appeal and cross-assignment of error not required. A person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal or to raise a cross-assignment of error."

**{¶76}** Mangano does not explain how the allegedly implicit decision of the trial court would affect our decision on appeal. The trial court's decision on appeal is unrelated to the expert's report. There is no indication that the argument presented under this cross-assignment is defending the judgment appealed by the appellant on

---

In any event, a reply is not the proper place for raising original arguments not raised in the appellant's brief, especially where they were not raised below. *See, e.g., Reed v. Jagnow*, 7th Dist. No. 12MA201, 2013-Ohio-2546, ¶ 42; *Wells Fargo Bank, N.A. v. Jarvis*, 7th Dist. No. 08CO30, 2009–Ohio–3055, ¶ 34-36.

a ground other than that relied upon by the trial court. *See* App.R. 3(C)(2). Rather, he is seeking to change an interlocutory ruling in the event the statute of limitations decision is reversed. *See* App.R. 3(C)(1). As such, this cross-assignment of error would be improper in the absence of a cross-appeal. In any event, we are affirming the trial court's statute of limitations decision on the 1999 policy which thus, as Mangano concedes, would render his argument moot.

**{¶77}** For all of the foregoing reasons, the judgment of the trial court is hereby affirmed. We hereby uphold the trial court's decision finding that the plaintiffs' claims involving the 1999 variable life policy are barred by the statute of limitations in R.C. 1707.43(B).

Donofrio, J., concurs.
Waite, J., concurs.